Commonwealth *v.* Ditzler et al., Appellants.

106

Submitted December 8, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Frederick S. Wolf,* and *Beaver, Wolf & Brandt,* for appellants.

*Joseph C. Mesics* and *George E. Christianson,* Assistant District Attorneys, and *Alvin B. Lewis, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 11, 1970:
· Judgments of sentence affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:
Judge SPAULDING'S able opinion, which appears below, sets out at length the facts of this case. These facts present the question whether appellants were denied their right to a speedy trial. Judge SPAULDING answers this question with care and insight. He concludes that, because appellants were denied their right, the case should be remanded to determine whether the denial was intentional. Because I differ with respect to the purpose of the remand, I write this brief opinion.

Upon review of the record, I find that appellants did not come within either the Act of June 28, 1957, P. L. 428, §§1, 2, 19 P.S. §§881, 882, nor within the Agreement on Detainers, Act of September 8, 1959, P. L. 829, 19 P.S. §1431 *et seq.* Accordingly, appellants' claim must rest upon constitutional error. Since their cases arose before the Supreme Court opinion in *Klopfer v. North Carolina,* 386 U.S. 213, 87 S. Ct. 988 (1967), they must show "evidence of actual prejudice" from the state's delay in bringing them to trial, even when that delay is intentional. *Dickey v. Florida,* 398 U.S. 30, 38, 90 S. Ct. 1564, 1569 (1970).* No record has been made which would allow us to determine whether actual prejudice occurred. Accordingly, I would remand the record for a hearing, at which appellants may present testimony to establish their claim of prejudice from the denial of a speedy trial.

MONTGOMERY, J., joins in this dissenting opinion.

---

DISSENTING OPINION BY SPAULDING, J.:

I respectfully dissent.

Appellants, Charles G. Ditzler and Leon H. Ruhl, appeal from the denial of motions in arrest of judgment and for a new trial by the criminal court of Lebanon County after conviction September 16, 1968, by a jury, for robbery and prison breach on January 13, 1965.

---

* Justice BRENNAN, joined by Justice MARSHALL, indicated that pre-*Klopfer,* "deliberate delay" and "substantial prejudice" may be the test to determine whether a defendant has been denied his right to a speedy trial. Id. at 40, 90 S. Ct. at 1570. Post-*Klopfer,* the test may still be "prejudice" until the point where "there arises a probability of substantial prejudice." Then, "it may be that an accused makes out a prima facie case of denial of speedy trial by showing that his prosecution was delayed *beyond the point at which a probability of prejudice arose* and that *he was not responsible* for the delay, and by alleging that *the government might reasonably have avoided it.*" Id. at 55-6, 90 S. Ct. at 1577-1578 [Emphasis added.].

108

Appellants were indicted February 15, 1965. In the interim, they were convicted on federal charges for theft of an automobile used in the escape, and began serving a 5 year term in the Atlanta Federal Prison.

Appellants made efforts in 1965 to secure a speedy trial in Lebanon County but were unsuccessful.

In March 1967, appellants requested dismissal of their indictment for lack of prosecution, contending that *Klopfer v. North Carolina,* 386 U.S. 213 (1967), made the federal right to a speedy trial[1] applicable to the States. The court denied this request. Towards the end of their federal sentences, appellants were transferred to prisons in Pennsylvania. On July 30, 1968, a writ of habeas corpus ad prosequendum was issued on the petition of the District Attorney of Lebanon County. On September 11, 1968, appellants filed motions to quash the indictments because of failure to grant a speedy trial, which were denied. At trial, the motion was renewed and again denied. Appellants neither presented witnesses nor testified. On September 23, 1968, appellants filed motions in arrest of judgment and for a new trial. In January 1969, the United States Supreme Court held that a State court could not deny a federal prisoner's request for trial on his State indictment. *Smith v. Hooey,* 393 U.S. 374 (1969). In May the court below refused appellants' motions. Judgment of sentence was entered on June 3, 1969.

Prior to *Smith v. Hooey,* Pennsylvania courts treated requests for trial by prisoners of other jurisdictions not party to the Agreement on Detainers[2] as beyond their power to grant.[3] *Smith* made it clear that

---

[1] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." U. S. Const., amend. VI.

[2] Act of September 8, 1959, P. L. 829, §1, 19 P.S. §1431.

[3] See *Commonwealth v. Bressler,* 22 Pa. D. & C. 2d 559, aff'd 194 Pa. Superior Ct. 208, 166 A. 2d 549 (1960), cert. den. 366 U.S. 932 (1961); *Commonwealth v. Harmon,* 21 Pa. D. & C. 2d 251 (1960).

administrative complexities and expense could not be held to nullify the right to speedy trial, nor to negate the constitutional duty to make a diligent good faith effort to bring the accused to trial.

*Smith* did not determine whether the delay there involved had violated the right to speedy trial, or what, if any, remedy should be granted.[4] In *United States v. Ewell*, 383 U.S. 116 (1966), a 19 month delay was caused by vacation of the original indictment on technical grounds, followed by reindictment. The Court denied dismissal, holding that while purposeful or oppressive delay is a per se violation, delay due to proper procedural requirements shifts the issue to whether actual harm has resulted. The Court stated that the right to speedy trial exists: . . . "to protect at least three basic demands of criminal justice . . . [1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation, and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself." 383 U.S. at 120, cited in *Smith*, 393 U.S. at 377-78. In *Klopfer v. North Carolina*, supra, the Court invalidated a nolle prosequi that left the decision whether and when to try the accused to the unregulated discretion of the prosecution. That procedure violated the right to speedy trial because it aggravated the

---

[4] The majority remanded without specific instructions. Justice BLACK, Justice WHITE, and Justice HARLAN noted in separate concurrences that the decision upon the federal constitutional question did not compel dismissal by the State court. Justice WHITE and Justice HARLAN stated the choice of granting trial or dismissing as totally within the option of the State. Justice BLACK wished it to be made clear to the State court that "so far as the federal constitutional question is concerned its judgment [denial of petition for writ of mandamus to show cause why the charges should not be dismissed] is set aside only for the purpose of giving the petitioner a trial, and that if a trial is given the case should not be dismissed."

anxiety of the accused and threatened his defense without reasonable justification.

Although *Smith* left the question of remedy unanswered, the Court discussed the special possibilities of injury to the interests outlined in *Ewell* in the case of an accused imprisoned by another jurisdiction. Some of these matters are inherent in the pre-*Smith* practice of abstaining from efforts to bring the accused to trial. The Court cited the opinion of a former Director of the Federal Bureau of Prisons that: "[I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantages of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement."[5]  Further, the Court stated that "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed."

Present Pennsylvania law on the right to speedy trial takes two different positions. Our general case law has followed the same balancing reasoning as *Ewell*. See *Commonwealth ex rel. DeMoss v. Cavell,* 423 Pa. 597, 601, 225 A. 2d 673, 675 (1967) ; *Commonwealth v. Stukes,* 435 Pa. 535, 545-47, 257 A. 2d 828, 832-34 (1969). On the other hand, our legislature has required automatic dismissal for failure to grant a prisoner's request for trial within a stipulated period, in the Act of June 28, 1957, P. L. 428, §§1, 2, 19 P.S. §§881, 882, and in the interjurisdictional Agreement on

---

[5] Bennett, "The Last Full Ounce," 23 Fed. Prob. No. 2, p. 20, at 21 (1959), cited at 393 U.S. 379.

Detainers, supra.[6] Further, our Rule of Criminal Procedure 316 (effective January 1, 1965) provides that dismissal of the prosecution may be granted for unreasonable delay in trial.

Although the statutory remedies expressly apply only to prisoners of Pennsylvania or of signatory jurisdictions, the statutes prohibit the kind of delay involved

---

[6] "881(a) : Whenever any person has entered upon any term of imprisonment . . . [in] this Commonwealth, and whenever during the continuance of the term of imprisonment there is pending in this Commonwealth any untried indictment against such prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the District Attorney of the County in which the indictment is pending and the appropriate court written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment: Provided, That for a good cause shown . . . the court . . . may grant any necessary or reasonable continuance.

. . .

§882 : In the event that the action is not brought to trial within the period of time as herein provided, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

. . .

§1431 : Agreement on Detainers, Article I : The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. . . ."

Article III(a) repeats the language of §881(a) with reference to penal institutions "of a party state", and to "any untried indictment, information or complaint" "pending in any other party state" "on the basis of which a detainer has been lodged against the prisoner." . . .

Article III(d) ". . . If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

here, and create the remedy to prevent it. *Smith* holds that the same prohibition applies as to prisoners of all jurisdictions other than the indicting State. We must prospectively treat all requests for trial by prisoners of other jurisdictions as if the statutory requirements and remedy applied.

In the instant case where the delayed trial has already taken place, we have the dilemma of dealing with *Smith's* overruling of former practice. The question is whether we should apply the dismissal remedy "retroactively." In *Dickey v. Florida,* 398 U.S. 30, 90 S. Ct. 1564 (1970), a recent case applying *Smith,* the State contended that there had been no constitutional requirement that a State press for trial of a defendant imprisoned by another jurisdiction until *Smith.* Chief Justice BURGER stated that such a requirement was basic to the right of speedy trial: "Stale claims have never been favored by the law, and far less so in criminal cases. . . . [T]he right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial. This is brought sharply into focus when, as here, the accused presses for an early confrontation with his accusers and with the State. Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law." (398 U.S. at 37-8, 90 S. Ct. at 1568-69).

In *Dickey* there was some showing of impairment of defense from loss of witnesses, which is not shown here. In my view, however, unless it was actually impossible to bring these appellants to trial, the denial of their requests cannot survive the tests of *Ewell* be-

cause of inherent prejudice. The practice of making no effort to bring out-of-state prisoners to trial unless the imprisoning state was party to the Agreement on Detainers may have burdened the accused without justifiable reason, like the nolle prosequi in *Klopfer*. Even assuming that it cannot be termed a "purposeful or oppressive" tactic for delay, it has clearly done harm, both in general and in the instant case, by "producing uncertainties which obstruct programs of prisoner treatment and rehabilitation"[7] and by negating the possibility of concurrent sentencing.[8]

I would vacate the order of the court below and remand the record for determination of whether there was any actual impediment to obtaining custody of these prisoners for trial from the federal prison authorities. Unless it is shown that a diligent effort to bring these men to trial would not have succeeded, I would discharge these appellants from further proceedings arising out of the charges on which the judgment below was based.

---

[7] See note 6, supra.

[8] The court below considered this issue, and concluded that concurrent sentencing was precluded under the Act of June 24, 1939, P. L. 872, §309, as amended July 16, 1968, P. L.     , No. 174, §1, 18 P.S. §4309, par. 2. I disagree. The statute is silent as to offenses committed after prison breach, such as that for which federal sentence was imposed in the instant case; it deals only with the sentence being served at the time of prison breach, sentence for a crime of which the accused was convicted at the time of prison breach, or other sentences previously imposed at the time of prison breach. See *Commonwealth ex rel. McGinnis v. Ashe*, 330 Pa. 289, 290-291, 199 A. 185, 186 (1938) ; *Commonwealth ex rel. Hill v. Burke*, 165 Pa. Superior Ct. 583, 588, 69 A. 2d 169, 171 (1949).